UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Newnan

SEP 19 2018

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

Darryl M. Reshaw,
Plaintiff

CIVIL ACTION
FILE NO: 3: 18-cv- 109 -TCB-
RGV

v.

SELECT PORTFOLIO SERVICING,
INC.

JURY TRIAL DEMANDED

Defendant

## VERIFIED COMPLAINT

COMES NOW Plaintiff Darryl M. Reshaw, and files this Verified

Complaint against Defendant SELECT PORTFOLIO SERVICING, INC. for

numerous violations of the FDCPA, FCRA, O.C.G.A § 10-1-390 Fair Debt

Collection Practices Act and the Credit Reporting Agency Act and claims arising

from the unlawful scheduling of a foreclosure October 2, 2018:

## PARTIES, JURISDICTION AND VENUE

1.  Plaintiff is an individual, a natural person, over the age of eighteen years and resident of FAYETTE County, Georgia.

2.  Defendant is a corporation organized under the laws of the Utah, and they will be served through their Registered Agent on file at Georgia Secretary of State's Office:  Registered Agent: **Corporation Service Company**, located at **40 Technology Parkway, South, Norcross, GA  30092, Gwinnett County, Georgia**. The subject real property of this action (the "Home" or "Property"), located at 345 Phillips Drive, Fayetteville, Georgia 30214.

3.  Jurisdiction is proper in this Court.

4.  Venue is proper in this Court.

## **RIGHT TO THE AMEND THE ACTION**

5.    The Plaintiff expressly reserves the right to amend or withdraw this Complaint at any time to correct service, join other Defendants, and/or Plaintiffs and to add more issues of FACT, and/or add addendums and/or plead additional damages to the Complaint.

6. Plaintiff is the owner of the residential real property commonly known as 345 Phillips Drive, Fayetteville, GA 30214 (hereinafter "Subject Property").

7. At all times material to this Complaint, Defendant was doing business in the State of Georgia, and regularly continues to engage in business in FAYETTE County, Georgia.

8. This is an action brought by a consumer for violations of the Fair Debt Collection Practices Act ("FDCPA"). [1]

9. Plaintiff is proceeding, pro per in this case. Therefore, this Court must construe this claim liberally and hold it to a less stringent standard than the Court would apply to a pleading drafted by a lawyer. **See**, *Laber v. Harvey*, 438 F.3d 404, 413n. 3 (4th Cir. 2006).

10. Plaintiff in this action is victim of unlawful acts and violations perpetrated by Defendant, in efforts to unlawfully foreclose on Plaintiff's property October 2, 2018.

11. In doing so, Defendant has made numerous violations of the FDCPA, FCRA, O.C.G.A § 10-1-390 Fair Debt Collection Practices Act and the Credit Reporting Agency Act ("CCRAA"). [2]

---

[1] The Fair Debt Collection Practices Act (FDCPA) protects debtors from harassment by debt collectors. If a collector has violated the FDCPA, you can sue the collector in court. The FDCPA provides a range of damages for successful FDCPA lawsuits including monetary damages, attorneys' fees, and more.

[2] The **Fair Debt Collection Practices Act (FDCPA)**, Pub. L. 95-109; 91 Stat. 874, codified as 15 U.S.C. § 1692 –1692p, approved on September 20, 1977 (and as subsequently amended) is a consumer

## FACTUAL BACKGROUND

12.    On April 30, 2007, Plaintiff entered into a mortgage loan transaction with

COUNTRYWIDE BANK FSB, (CWB), Inc to purchase property at 345 Phillips

Drive, Fayetteville, GA 30214, executing a promissory note in favor of

COUNTRYWIDE BANK FSB, with a loan amount of $569,000.00.

13.    Plaintiff also executed a Security Deed granting MORTGAGE

ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS), as nominee for

CWB and its successors and assigns, a security interest in the property to secure

Plaintiff's indebtedness under the note.

14.    The Security Deed was recorded on May 14, 2007, at Deed Book 3229, Page

467 in the clerk's Office of the Superior Court of Fayette County.

15.    On or about July 18, 2011, MERS, a nominee for COUNTRYWIDE BANK

FSB, executed an alleged Assignment in which it transferred all of its interest in

the Security Deed to BAC Home Loans Servicing LP FKA Countrywide Home

Loans Servicing LP.

---

protection amendment, establishing legal protection from abusive debt collection practices, to the
Consumer Credit Protection Act, as Title VIII of that Act. The statute's stated purposes are: to eliminate
abusive practices in the collection of consumer debts, to promote fair debt collection, and to provide
consumers with an avenue for disputing and obtaining validation of debt information in order to ensure
the information's accuracy.[1] The Act creates guidelines under which debt collectors may conduct
business, defines rights of consumers involved with debt collectors, and prescribes penalties and remedies
for violations of the Act. It is sometimes used in conjunction with the Fair Credit Reporting Act.[

16.     In December 2011, MERS, a nominee for COUNTRYWIDE BANK FSB,

executed an alleged Corrective Assignment in which it transferred all of its interest

in the Security Deed to Bank of America, NA, Successor By Merger to BAC

Home Loans Serving, LP FKA Countrywide Home Loans Servicing. In May 2012,

Bank of America, NA executed an alleged Assignment in which it transferred all

of its interest in the Security Deed to HSBC Bank USA, National Association, As

Trustee for the Holders of the Deutsche ATL-A Securities, INC Mortgage Loan

Trust, Mortgage Pass-Through Series 2007-OA3.

**FACT**: It is Plaintiff's belief and understanding that the loan has been securitized

into Deutsche Alt-A 2007-OA3 Trust. The trustee is Wells Fargo Bank and they

could only obtain the loan from Mortgage IT Securities Corp not from Bank of

America. Therefore, this is not even a valid assignment and Wells Fargo cannot

now or then show that it has possession of Plaintiff's endorsed note

17.     On or about September 10, 2015, SELECT PORTFOLIO SERVICING,

through the law firm of RUBIN LUBLIN, advertised its first notice of sale under

power of Plaintiff's property on October 6, 2015, as a result of Plaintiff's default

on the loan secured by the property. The notice identified SELECT PORTFOLIO

SERVICING as the holder of the Security Deed and SELECT PORTFOLIO

SERVICING as the loan servicer. Plaintiff concedes that his loan was in default as

of May 2012.

## **DEFINITIONS**

18. Under the FDCPA 15 U.S.C. § 1692a(4) the term "**creditor**" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he/she receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

19. Under the FDCPA 15 U.S.C. § 1692a(5) the term "**debt**" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

20. Under the FDCPA 15 U.S.C. § 1692a(6) the term "**debt collector**" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

21. Under the FDCPA 15 U.S.C. § 1692e A **debt collector** may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.

22. Under the FDCPA 15 U.S.C. § 1692f – A **debt collector** may not use unfair or unconscionable means to collect or attempt to collect any debt.

23. Under the FDCPA 15 U.S.C. § 1692i - (a) Any **debt collector** who brings any legal action on a debt against any consumer shall – in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located.

24. On or about October 29, 2015, Plaintiff received his first dunning [3] notice from Defendant's foreclosure mill collection attorney, RUBIN LUBLIN, LLC. At the time this notice was received, Plaintiff was in default.

**Excerpt out of Notice of Sale Under Power State of Georgia, County of Gwinnett:** "Because the debt remains in default, this sale will be made for the purpose of paying the same and all expenses of this sale…including attorneys fees (notice of intent to **collect** attorneys fees having been given.")

25. Plaintiff has come to the understanding and belief, according to the FDCPA 15 U.S.C. § 1692a(4), and FDCPA 15 U.S.C. § 1692a(6), that Defendant here through their legal counsel RUBIN LUBLIN, LLC is attempting to collect a debt which was obtained in default solely for the purpose of collecting on the alleged debt, which thereby made the Defendant through the Defendant's attorney "**debt collector**" as the term is defined above according to the FDCPA.

---

[3] make persistent demands on (someone), especially for payment of a debt.
"they would very likely start dunning you for payment of your taxes"

# NOTICE TO THE AGENT IS NOTICE TO THE PRINCIPAL AND NOTICE TO THE PRINCIPAL IS NOTICE TO THE AGENT.

26. As a "**debt collector**" the Defendant has violated numerous FDCPA statues, and their violation has caused great harm to the Plaintiff. What this Court needs to understand is that the Defendant SELECT PORTFOLIO SERVICING, INC. is a

**DEBT COLLECTOR** and not a **CREDITOR**. [4]

27. Thereby, Defendant is not a creditor Defendant is a "DEBT COLLECTOR" and must adhere to debt collector laws and regulations.

28. Here, Defendant has never provided any type of admissible evidence and has failed to validate the alleged debt. This complaint is not merely about the existence of an alleged debt, or even whether Defendant has a right to collect. **This complaint is about Defendant's misrepresentation, and egregious actions, while attempting to collect on the alleged debt that has not yet been proven, and their failure to abide by the laws that mandate them while doing so.**

---

[4] A **creditor** is a party (e.g. person, organization, or company) that has a claim on the services of a second party. It is a person or institution to whom money is owed. The first party, in general, has provided some property or service to the second party under the assumption (usually enforced by contract) that the second party will return an equivalent property and service. The second party is frequently called a debtor or borrower. The first party is the creditor, which is the lender of property, service or money. The term creditor is frequently used in the financial world, especially in reference to short-term loans, long-term bonds, and mortgage loans.

## GENERAL ALLEGATIONS

29.  Plaintiff is informed and believes and therefore alleges that: **This alleged debt was acquired by Defendant after it was in default.** According to FDCPA 15 U.S.C. § 1692a(6), if a debt is acquired while in default the entity that acquires it is considered to be a "**debt collector**."

30.  It is not relevant whether the debt was acquired through acquisition, assignment, or as successor in interest, as the statute makes no exception regarding the method of acquisition of the debt, **only that if the debt when acquired was in default** and the entity that acquired it merely for collecting the debt than that entity is deemed a "**Debt Collector**" under the statute. That entity is the Defendant

31.  So therefore it would not matter if the alleged debt was acquired by or through a successor in interest, even if they were able to provide a copy of the purchase assumption agreement which specifically list the alleged debt, including but not limited to the account number, amount owning on the alleged debt at the time of purchase, and the amount which was paid for alleged debt.

32.  Here, Defendant is stating that there is non-payment of the alleged debt by Plaintiff yet they have not provided any acceptable documentation that evidences payment to the original lender – COUNTRYWIDE BANK - was ever recorded as delinquent.

33. The alleged debt was in default so that would mean that the Defendant is in violation of the FDCPA and if the alleged debt was not in default then the Defendant would still be in violation of the FDCPA due to the misrepresentation, false and wrongful collection.

34. Plaintiff in this action is a victim of unlawful acts perpetrated by Defendant, in efforts to unlawfully try to foreclose on Plaintiff's property.

35. According to the FDCPA, the only method of foreclosure that a "**debt collector**" can avail themselves to would be a judicial foreclosure, and even if Defendant was to prevail the judgment could only be for monetary compensation not possession of real property. *See* 15 USC 1692i. [5]

36. In taking the actions Defendant has taken by illegally pre-foreclosing on Plaintiff's real property though a non-judicial foreclosure scheduled for October 2, 2018, Defendant has made numerous violations of the FDCPA, FCRA, O.C.G.A. § 10-1-390, and Georgia's Fair Business Practices Act, O.C.G.A. Sections 10-1-393 et. Seq.

---

[5] (a) **Venue**

Any debt collector who brings any legal action on a debt against any consumer shall—

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity—

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

(b) **Authorization of actions**

Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.

37. Defendant is engaged in the collection of debts from consumers using the mail and telephone. Defendant regularly attempts to collect debts alleged to be due to another.

38. Under the FDCPA 15 U.S.C. § 1692 the term "**debt collector**" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

39. Defendant here is a **debt collector** under the FDCPA. Defendant is **NOT** the creditor or lender they are the servicer (It even states servicing in their name). [6] There is no evidence presented that even comes close to proving that Defendant is a lender or the secured creditor – they just have the servicing contract. So, to say that the FDCPA does not apply because Defendant is a lender or creditor would be to apply the law incorrectly and grossly harm the Plaintiff.

---

[6] LENDER - Someone who makes funds available to another with the expectation that the funds will be repaid, plus any interest and/or fees.

40. Here, in this case, Defendant admits to being a LOAN SERVICER. [7] Even Defendant's attorney, RUBIN LUBLIN, LLC, who is also a debt collector (call the office number and they plainly state that they are trying to collect a debt) admits that the Defendant is a loan servicer, which according to the FDCPA where a loan servicer becomes the loan servicer after the borrower is in default, the loan servicer is a "**debt collector**" and becomes obligated to comply with the FDCPA in all respects. *See Santoro v. CTC Foreclosure Serv. Corp.*, 12 F. App'x. 476, 480 (9th Cir. 2001); *Kee v R-G Crown Bank*, 656 F. Supp. 2d 1348, 1354 (D. Utah 2009) (determining 'that a loan servicer…is only a 'debt collector' within the meaning of the FDCPA **if it acquires the loan after it is in default'**). *See* also *Alibrandri v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82 (2nd Cir. 2003) (holding that a debt was in "default" and a service provider was a "debt collector," by virtue of the service

---

[7] **Loan servicing** is the process by which a company (servicing firm, etc.) collects interest, principal and escrow payments from a borrower. The vast majority of mortgages are backed by the government or government-sponsored entities (commonly referred to as "GSE's") through purchase by Fannie Mae, Freddie Mac or Ginnie Mae (which purchases loans insured by the Federal Housing Administration (FHA). **Because the GSE's and private loan investors typically do not service the mortgage loans that they purchase, the bank who sells the mortgage will generally retain the right to service the mortgage pursuant to a master servicing agreement.**

In exchange for performing these activities, the servicer generally receives contractually specified servicing fees and other ancillary sources of income such as float and late charges. Mortgage servicing became "far more profitable during the housing boom", and some servicers targeted borrowers "less likely to make timely payments" in order to collect more late fees.

providers collection letter declaring the debt in default and informing the debtor that the service provider was, in fact, a debt collector). [8]

41. Federal courts have held that servicing companies must comply with the FDCPA. [9]

42. A Federal District Court within the Ninth Circuit Court of Appeals has held that WELLS FARGO BANK may be a debt collector required to comply with the FDCPA. *See Williams v. Wells Fargo Bank, N.A., Et al.*, 2012 U.S. Dist. LEXIS 2871 (W.D. WA, January 12, 2012).

43. In *Williams*, the consumers alleged WELLS FARGO BANK was in violation of Federal debt collection laws by failing to provide verification of the alleged debt. 15 U.S.C. § 1692, et Seq. In their motion to have the lawsuit dismissed, WELLS did not claim that the bank had provided verification of the debt to the consumers. [10]

---

[8] In Defendant's NOTICE OF SALE UNDER POWER, published in the Gwinnett Daily Post, at the top of the listing it states in BOLD LETTERS "**THIS IS AN ATTEMPT TO COLLECT A DEBT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE**."

[9] On December 2, 2010, David S. Williams and Christine L. Williams filed a lawsuit against Wells Fargo Bank, N.A. ("Wells Fargo "). Their lawsuit alleged Wells Fargo violated the federal Fair Debt Collection Practices Act, the Fair Credit Reporting Act, the Truth in Lending Act, the Real Estate Settlement Procedures Act, and the Washington Consumer Protection Act, in relation to a wrongful foreclosure of their home. Basically, the consumers argued their home mortgage had been refinanced and Wells Fargo had already been paid.

[10] The Fair Debt Collection Practices Act as codified at 15 USC § 1692 et seq. (and as abundantly pointed out within the Administrative Remedy Demand), declares that a debt collector must -- if requested by a QWR -- provide a verification of the alleged debt, i.e. validate the debt. Per the FDCPA, the debt collector is mandated to cease all collection activity and any foreclosure proceedings until

44. Instead, the bank asserted two reasons the case should be dismissed. First it argued it was not a debt collector under the FDCPA. They argued that the FDCPA only applies to "parties collecting the debt of another," 15 U.S.C. § 1692(a)(6), and that "creditors, mortgagors and mortgage servicing companies are not 'debt collectors' and are exempt from liability under the FDCPA. Id. (citing *Caballero v. SELECT PORTFOLIO SERVICING, INC.*, 2009 U.S. Dist. LEXIS 45213, 2009 WL 1528128, at *1 (N.D. Cal, 2009) and *Glover v. Fremont Inv. And Loan*, 2009 WL 6114001, at *8 (N.D. Cal. 2009).

45. Simply put, WELLS FARGO BANK claimed that the FDCPA does not apply in a non-judicial foreclosure proceeding.

46. They argued that when there is a typical foreclosure on a security deed, (where there is no lawsuit filed by the bank), the bank is not attempting to collect money, and thus they are not really attempting to collect a debt.

47. The Federal Court disagreed with the bank on both grounds. The Court reasoned that the term "**debt collector**" applies to those who acquired the debt when it was already in default. *See Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003).

**NOTE**: In this case the Defendant is a DEBT COLLECTOR as they acquired the debt when it was already in default.

---

verification is provided. Plaintiff has mailed a Qualified Written Request for verification to the Defendant with no results.

48. The Court noted that WELLS admitted the debt had already been in default when the security deed was assigned to WELLS FARGO BANK, and thus the bank met the definition of a debt collector under the FDCPA.

49. Next, the Court ruled on the issue of whether foreclosing on a property could be considered an attempt to collect a debt. "Although the Court is aware of district court cases that have held that the act of foreclosing on a property is not "debt collection" under the FDCPA, this Court has not adopted such a per se holding and it will not do so here. *See Albers v. Wells Fargo Mortg.* LLC, 2011 U.S. Dist. LEXIS 182, 2011 WL 43584, a *2 (E.D. Wash. Jan. 3, 2011) (citing cases).

50. Nothing in the statute compels the Court to create an exception to the definition of "debt collector," as WELLS proposes, where a party is non-judicially enforcing on a security instrument rather than pursuing debt collection through more traditional means. To the contrary, **courts have reasoned that as long as a Defendant(s) meet(s) the statutory definition of debt collector, "they can be covered by all sections of the Act...regardless of whether they also enforce security interest**." *See Wilson v. Draper & Goldberg, PLLC*, 443 F.3d 373, 378 (4th Cir. 2006)(referring to § 1692f(6) as an inclusive provision); *see* also *Kaltenbach v. Richards*, 464 F.3d 524, 528-29 (5th Cir. 2005) (noting that "the entire FDCPA can apply to a party whose principal business is enforcing security

interest but who nevertheless fits § 1692f(6)'s general definition of debt collector").

51. Once again, the Court should note that the alleged debt claimed by Defendant was in default when the security deed was assigned, and **thus Defendant meets the definition of a debt collector under the FDCPA.**

52. **Defendant is not a CREDITOR or a LENDER they are the servicer.** [11]

53. On the cover page (¶3) of the dunning notice it states: "the debt is owed to HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE HOLDERS OF THE DEUTSCHE ALT-A SECURITIES, INC. MORTGAGE LOAN TRUST, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2007-OA3, who is authorized to receive payment on your loan, but who may not be the reordered holder of the Security Deed." **This is more proof that the Defendant is a debt collector.**

54. In addition, where a loan servicer becomes the loan servicer after the borrower is in default, the loan servicer is a "**debt collector**" and becomes obligated to comply with the FDCPA in all respects. *See Santoro v. CTC Foreclosure Serv. Corp.*, 12 F. App'x. 476, 480 (9th Cir. 2001); *Kee v. R-G Crown Bank*, 656 F. Supp. 2d 1348, 1354 (D. Utah 2009) (determining 'that a loan

---

[11] "Subordination does not create a security interest [secured creditor] as against either the common debtor or a subordinated creditor." Uniform Commercial Code § 1-310 Subordinated Obligations

servicer...is only a 'debt collector' within the meaning of the FDCPA if it acquires the loan after it is in default'). *See also Alibrandri v. Fin. Outsourcing Servs,. Inc,.* 333 F.3d 82 (2d Cir.2003) (holding that a debt was in "default" and a service provider was a "**debt collector**," by virtue of the service providers collection letter declaring the debt in default and informing the debtor that the service provider was, in fact, a **debt collector**).

55.   Furthermore, Plaintiff is a "**consumer**" as that term is defined in 15 U.S.C. § 1692a(3), 15 U.S.C. § 1681, and CA Code 1788.2(c), since the alleged debt here deals with the purchase of a home, which means it's a debt incurred for personal family purposes. [12]

56.   Plaintiff does not have a contract with the Defendant.

57.   To the best of Plaintiff's knowledge and belief, Defendant has used the mails of the United States to attempt to collect from Plaintiff an alleged debt purportedly previously owed to an "original creditor," other than the Defendant, which has purportedly been "charged off" for tax purposes.

---

[12] The law primarily uses the notion of the consumer in relation to consumer protection laws, and the definition of consumer is often restricted to living persons (i.e. not corporations or businesses) and excludes commercial users. A typical legal rationale for protecting the consumer is based on the notion of policing market failures and inefficiencies, such as inequalities of bargaining power between a consumer and a business. As of all potential voters are also consumers, consumer protection takes on a clear political significance.

58. Defendant has violated 15 U.S.C. § 1692e, because it made and/or employed false, deceptive and misleading representations and/or means in connection with the instant cause of action.

59. Said false, deceptive and misleading representations were and have been made and are being made to credit reporting bureaus and others as more specifically set out hereafter.

60. Some or all of said false, deceptive and misleading representations were knowingly and intentionally made by Defendant.

61. Defendant has violated the FDCPA, U.S.C. § 1692d because it has engaged in conduct of which the natural consequence of which is to harass, oppress, or abuse Plaintiff in connection with the alleged attempt to collect on this debt and foreclosure of Plaintiff's property. Defendant knowingly and intentionally engaged in harassing, oppressive, and/or abusive conduct toward Plaintiff. Defendant knew or should have known that the natural consequences of said conduct would be to harass, oppress, or abuse the Plaintiff.

62. Defendant violated the FDCPA, and is liable to Plaintiff for statutory, actual, and punitive damages thereon, attorneys' fees, and costs. Said violations include, but are not limited to violations of 15 U.S.C. § 1692e, et Seq. and 15 U.S.C. § 1692d, et Seq.

63. Defendant has knowingly, intentionally, deliberately, and fraudulently misrepresented, and/or mislead what Plaintiff's legal status, character, and/or amount of the debt was in violation of 15 U.S.C. § 1692e(2), and in violation of U.S.C. § 1692e(10).

64. Defendant has not verified or produced: any accounting or financial records, including the above records, necessary to prove the breakdown of the purported "total" amount alleged to be owed, with respect to its components, such as principal, interest, late fees, over limit fees, etc. or their current license in the state of Georgia to act as a **debt collector**. [13]

65. Defendant's foreclosure mill attorney, RUBIN LUBLIN, LLC, is also a debt collector and who has admitted to being one through their voice recordings and correspondence.

66. In their correspondence letters RUBIN LUBLIN, LLC misrepresents and harasses Plaintiff and attempts to intimidate him into paying for an alleged debt in which he does not know who the secured creditor is.

## FIRST CLAIM FOR RELIEF

## FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA),

---

[13] Plaintiff has asked the Defendant to produce the accounting of all charges on, against or towards the loan, including all credits, debits, and set offs plus the productions of IRS Form 1066 along with all the Schedules and Appendixes including "J" and "Q". Since Plaintiff's note was "assigned" to a REMIC Trust. Also the Plaintiff has asked the Defendant for a copy of the "Bailee Letter."

## 15 U.S.C. § 1692 ET SEQ.

67. Plaintiff incorporates the allegations in all preceding paragraphs as if fully set forth herein.

68. Plaintiff is a "**consumer**" as defined by 15 U.S.C. § 1692a(3).

69. Defendant has violated the FDCPA in connection with attempts to collect against an account against Plaintiff. Defendant's violations include, but are not limited to 15 U.S.C. § 1692d, 1692e, 1692e(2)(A), 1695e(5), 1692e(8), 1692e(10), 1692g and 1692i.

70. Defendant has violated FDCPA 15 U.S.C. § 1692j, as Plaintiff believed they were acting on behalf of the actual creditor, however, in reality they were engaging in conduct of which the natural consequence was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt; and they also used false, deceptive, or misleading representations or means in connection with the collection of a debt; supported by the unauthenticated robo-signed assignment; and thus violated the FDCPA. [14]

---

[14] When the Bank is asked to produce the ORIGINAL CONTRACT NOTE/PROMISSORY NOTE/LOAN AGREEMENT they have difficulty in so doing. Why? Well, 99% of the time the debt has been bundled up and sold on and on and on in the sub-prime and descending levels of banking debauchery. No one really knows where the notes are. In many foreclosure instances the foreclosure documents are ROBO-SIGNED by clerks and people who have no idea what they are signing and HAVE NOT VERIFIED THE STATE OF THE CONTRACT. In addition once the primary lender (the only one who can enforce it and is party to the original contract by the way!) has written off the loan and passed it to the collection agency or secondary party he has "received his pound of flesh" and the loan amount should be written off as either the government bailout covers the loss or the tax breaks cover the loss as a "write off."

71. The FDCPA imposes civil liability on "debt collectors" for certain prohibited debt -collection practices. *Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1299 (11th Cir. 2012). In order to state a plausible FDCPA claim, "a plaintiff must allege, among other things, (1) that the defendant is a debt collector and (2) that the challenged conduct is related to debt collection." *Reese v. Ellis, Painter & Adams LLP*, 678 F.3d 1211, 1215 (11th Cir. 2012)(quotation omitted).

72. The FDCPA and the FCCPA have certain parallels, as both relate to consumer protection against creditors, and include nearly identical definitions of "communication," "debt," and "debt collector." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1191-91 (11th Cir. 2010); 15 U.S.C. §§ 1692a(2), (5)-(6); FLA. STAT. §§ 559.55(2), (6)-(7)

73. As of the date of this filing Defendant has failed to validate the alleged debt, which is a violation of FDCPA 15 U.S.C. § 1692g, in spite of the fact that they have placed a negative entry on the consumer's credit report.

74. A unlawful, fraudulent non-judicial foreclosure by a "**Debt Collector**" attempting to seize real property violates FDCPA 15 U.S.C. § 1692i.

75. Failure to Validate the alleged debt as required is a violation of 15 U.S.C. § 1692g. Plaintiff sent Defendant a registered certified NOTICE OF VERIFICATION which the Defendant has ignored.

76. Plaintiff alleges that Defendant routinely ignored, and violated FDCPA to enhance their own profits, starting on or about February 2013, until the present.

77. Defendant has sent an assortment of correspondence to Plaintiff (as so did the Defendant's attorney) which state that this is an attempt to collect a debt, which clearly states that their communication is from a **debt collector**, in an attempt to collect a debt.

78. However, they wrongfully state that their actions are that of a **creditor**.

79. Plaintiff is very confused by who they are especially; because he has no records of ever signing any sort of contract with the Defendant, and they have failed numerous times to clearly identify themselves as requested.

80. Defendant's conduct was negligent and/or willful, rendering it liable for failing to cease collection of an alleged debt, and not providing proper validation of the alleged debt to Plaintiff, 1692g(b).

81. As a result of the foregoing violations, Defendant is liable for actual damages, including general damages and special damages in an amount to be proven at trial, but not less than \$2,000 per Plaintiff, pursuant to FDCPA 15 U.S.C. § 1692(k) a 1.

82. As a result of the foregoing violations, Defendant is liable for actual damages, including general damages and special damages in an amount to be proven at trial, but not less than \$1,000 per Plaintiff, pursuant to FDCPA 15 U.S.C. § 1692(k) a 2 a.

83. As a result of the foregoing violations, Defendant is liable for costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k) a 3.

84. As a result of the foregoing violations, Defendant should be enjoined from employing any of the unlawful conduct, methods, acts, or practices under the FDCPA alleged herein or proven at trial and the foreclosure sale should be set aside.

85. An actual controversy has arisen and now exists between Plaintiff and Defendant concerning their respective rights and duties under the FDCPA. A judicial declaration pursuant to Code of Civ. Procedure 1060 that Defendant's actions violated the FDCPA is necessary so that all parties may ascertain their rights and duties under the law.

86. Based on the allegations above and further set forth herein, Defendant violated FDCPA 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Plaintiff by, without limitation; Continuing to pursue collection of disputed and unverified debt; foreclosing on Plaintiff's property to sell it; forcing Plaintiff to defend against an invalid action, and further, and in addition thereto, knew or should have known that it has engaged in such conduct, and the said consequences thereof.

87. Upon information and belief, Defendant has communicated credit information to persons, including but not limited to credit reporting bureaus or agencies, with respect to the Plaintiff.

88. Information, which Defendant and Defendant's legal counsel knew or should have known to be false – including without limitation allegations that Plaintiff owed the purported debt which is the subject of this action, and/or that Plaintiff owes said debt to Defendant and/or that Defendant is the original creditor of said alleged debt.

89. Upon information and belief, Defendant is in violations of FDCPA 15 U.S.C. § 1692e(8), because Defendant failed to communicate to Plaintiff, other persons and entities, including credit bureaus, and persons yet to be determined, that Plaintiff has disputed the alleged debt.

90. Under the FDCPA 15 U.S.C. § 1692f – a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt; (6) Taking or threatening to take any non-judicial action to effect dispossession or disablement of property if – (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest.

91. In *Armacost v. HSBC Bank USA*, No. 10-CV-0274-EJL-LMB, 2011 WL 825151 (D. Idaho Feb. 9, 2011) the Plaintiffs generally alleged violations of FDCPA 15 U.S.C. § 1692f and argued that Defendants did not have standing to

foreclose on the deed of trust. **Defendant here also does not have standing to**

**foreclose.**

**FACT**: To prove standing, the defendant must show, through admissible evidence, that it holds the note and mortgage or is acting as the note holder's authorized representative. Several recent appellate decisions have dismissed foreclosures, reversed summary judgments, and even imposed sanctions against lenders and their counsel for failing to prove standing.

92.   The court first noted that the definition of "**debt collection**" found in FDCPA

15 U.S.C. § 1692a(6) included the following sentence: "For the purpose of section

1692f(6) of this title, [a debt collector] also includes the principal purpose of which

is the enforcement of security interests." *Id.* It then explained that 15 U.S.C. §

1692f(6) prohibits a debt collector from "taking or threatening to take any non-

judicial action to effect dispossession or disablement of property if (A) there is no

present right to possession of the property claimed as collateral through an

enforceable security interest." *Id.* At n.5 (quoting 15 U.S.C. § 1692f(6). The case

stated, "if 'debt collection' generally included the enforcement of a security

interest, the language specifying so for the purposes of § 1692f(6) would be

surplusage, and such a construction would violate a 'long standing canon of

statutory construction' that terms in a statute should not be construed so as to

render any provision of that statute meaningless or superfluous." *Id.* (quoting *Beck*

*v. Prupis*, 529 U.S. 494, 506 (2000)) (footnote omitted). The court thus concluded

that while "a non-judicial foreclosure action generally does not constitute a 'debt

Case 3:18-cv-00109-TCB   Document 1   Filed 09/19/18   Page 26 of 52

collection activity' under the FDCPA," **an exception to this rule** existed for claims under 15 U.S.C. § 1692f(6) *Id.*

93. By falsely representing that Defendant is either an assignee of an original creditor, and/or that said alleged assignment constitutes a proper, competent, or valid assignment between Defendant and the original creditor of any alleged debt by any alleged original creditor to Defendant, and/or that Defendant is the original creditor, Defendant has made material false and misleading representations, and have further communicated to the Plaintiff and other persons credit information which is known or which should be known to be false, including the above, the failure to communicate that a disputed debt is disputed, the "**re-aging**" of said debt, the false and misleading representation and impression that the Defendant is the original creditor of said debt, and other material false and misleading representations, and has violated FDCPA 15 U.S.C. § 1692e,  15 U.S.C. § 1692e(8),  § 1692e(2)(A), § 1692e(5), § 1692e(10) and § 1692f. [15]

94. Defendant either knew or should have known all of the above.

---

[15] One of the fundamental tenets of our legal system is expressed in what is called the "statute of limitations." This is a term heard in both civil and criminal litigation, and it refers to a certain amount of time that someone has to bring an action against another party. It is set by statute, either federal or state. The same situation exists with civil matters, such as collecting on debt. There is a statute of limitation under which creditors (or collectors) may file suit to collect that debt. It varies from six to seven years in the state of Georgia. But that doesn't prevent them from trying to collect on the debt outside of court, and that's where the **term "re-aging" comes into play**.
Let's say you have a bad debt. You are beyond the statute of limitations. A friendly collector contacts you about what you owe. If you make a payment of even a dollar, or so much as tell him on the phone that you'll pay, you may trigger "re-aging" – which starts the statute of limitations clock all over again.

95.   By reporting that Plaintiff had an account, and with Defendant reporting this
to credit bureaus this was misleading information regarding the nature and/or status
of said alleged debt with respect to such matters as the identity of the original
creditor, the relevant dates and ages of said alleged debt, and other matters which
Defendant knew or should have known would mislead, Defendant has violated 15
U.S.C. § 1692e(2)(A), § 1692e(8), § 1692e(10) and § 1692k(a)(3).

96.   The FDCPA, § 1692k, provides for actual damages, statutory damages up to
one-thousand dollars per violation, costs of the action and reasonable attorneys'
fees.

97.   **Plaintiff has suffered actual damages as the proximate and actual cause
and result of the violations of the FDCPA by Defendant to be determined at
trial**. Defendant is liable to Plaintiff for statutory damages as prescribed by §
1692k(a)(2)(A), actual damages pursuant to § 1692k(a)(1) in an amount to be
determined at time of trial with reasonable attorneys' fees and costs pursuant to §
1692k(a)(3).

98.   It seems that the reference number that Defendant instructs Plaintiff to use
when making payments is different from that which was provided by the original
lender COUNTRYWIDE BANK, FSB. If Defendant is the servicer of the loan and
is acting on behalf of the original lender why would Defendant change the number
to which Plaintiff's payments were applied?

99.   This leads Plaintiff to believe the payments will be misapplied, incorrect

credit would be issued, and which make the Plaintiff vulnerable to future

collections by the original debt as these payments will not be properly applied. [16]

100.   Courts carefully scrutinize non-judicial foreclosures and set them aside if the

borrower's rights have been violated. *See Stirton v. Pastor* (1960) 2 Cal. Rptr. 135,

177 Cal. App. 2d 232.

101.   Plaintiff hereby prays for actual damages under the FDCPA and for statutory

damages as set forth above for each and every violation of the FDCPA proven at

the trial of this case and reasonable attorneys' fees and costs thereunder.

## SECOND CLAIM FOR RELIEF

## FAIR CREDIT REPORTING ACT

102.   Plaintiff incorporates the allegations in all preceding paragraphs as if fully

set forth herein.

_____

[16] False Servicer Fees: The banks farmed out mortgage servicing to their own subsidiaries, "misplacing" payments that ought to have gone to the securities holders. **This was in order to claim borrowers were delinquent so that the servicers could squeeze late fees and default fees and extra interest out of them.** Investors in the securities would be last in line, with the servicers maximizing their own incomes and protecting the interests of their mother banks. This is why **the servicers make it so difficult to modify the loan—which is in the interests of the borrowers and the investors, but against the interest of the banks.** And they created MERS to operate as a foreclosure steam roller, which outsourced the foreclosures back to the servicers with deputized "vice presidents" pretending to be officers of MERS **in order to scam the courts**. Go watch the new movie "THE BIG SHORT".

103. Defendant by their own admission is a "**debt collector**" pursuant to 15 U.S.C. § 1692a(6), and 15 U.S.C. § 1691n.

104. Plaintiff is a "**consumer**" as that term is defined in 15 U.S.C. § 1692a(3), and 15 U.S.C. § 1691.

105. Defendant is not a creditor as they have mislead the Plaintiff [consumer] in believing, by sending confusing and conflicting documents making it difficult if not impossible for a consumer/homeowner to clearly identify what their true identity is. According to 15 U.S.C. § 1692a(6) and by their own admission they are debt collectors, however, their conduct and wrongful statements would lead one to believe that they might possibly be the actual creditor.

106. Plaintiff has not applied for, neither has he received any services, insurance, employment or credit with Defendant. Additionally, Defendant obtained Plaintiff's consumer credit report and made an inquiry on his report. Defendant obtained the credit report by misrepresenting to the credit bureaus that they had a right to run Plaintiff's credit. Therefore, Defendants intrusion into counter Plaintiff's personal credit file constitutes a willful and negligent violation of 15 U.S.C. § 1681q, which is a criminal offence (felony) punishable under Title 18 § USC, the penalty being a fine and/or two years imprisonment.

107. Under the FCRA, 15 U.S.C. § 1681, et Seq., consumer agencies are authorized to furnish consumer reports only for certain "permissible purposes." If

the credit transaction is not initiated by the consumer, the consumer agency is further restricted, and may issue a credit report only if, among other things, "the transaction of a firm offer of credit..." See 15 U.S.C. § 1681b(c)(I)(B)(i).

108. Plaintiff asserts that Defendant violated § 1681b(c) by obtaining credit information without a "permissible purpose." As stated above Defendant obtained Plaintiff's personal credit file, made inquiries and negative entries on his credit report without permission and without a permissible purpose; there was absolutely no reason for Defendant to obtain Plaintiff's credit report. Thus, Defendant is in violation of the FCRA.

109. Plaintiff believes Defendant has misrepresented the status of the account with the original lender COUNTRYWIDE BANK, FSB According to Plaintiff's credit report the account with the original lender has been paid or is being paid as agreed, which leads Plaintiff to question Defendant's attempt to validate the alleged debt they claim to be owed to them by the Plaintiff.

110. As a result of Defendant's knowingly and willfully request and receipt of information on the Plaintiff from consumer reporting agencies under false pretenses, Defendant is liable to the Plaintiff under the FCRA.

111. Pursuant to 15 U.S.C. § 1681q and 15 U.S.C. § 1681n any person who knowingly and willingly obtains information on a consumer from a consumer reporting agency under false pretenses is liable to that consumer in an amount

equal to the sum of (i) any actual damages of not less than $100.00 and not more than $1,000.00; (ii) such amount of punitive damages as the court may allow; and (iii) in the costs of this action together with reasonable attorneys' fees.

112.   As a result of Unknown Persons request and receipt of consumer report under false pretenses or knowingly without a permissible purpose. Unknown Persons are liable to the Plaintiff in an amount equal to the sum of (i) any actual damages sustained by the Plaintiff as a result of the failure or $1,000.00, whichever is greater, (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

113.   As the principle of its agents, Defendant is unknown to the Plaintiff and is liable to the Plaintiff for any and all damages suffered by Plaintiff as a result of the unlawful acts of unknown persons.

114.   As a result of Defendant's negligent failure to comply with the FCRA, Defendant is liable to the Plaintiff in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as a result of said failure and (ii) the cost of the action together with reasonable attorneys' fees.

## **THIRD CLAIM FOR RELIEF**

## **NEGLIGENCE**

115. Plaintiff incorporates the allegations in all preceding paragraphs as if fully set forth herein.

116. At all times herein, Defendant has a duty to exercise reasonable care and skill to maintain proper and accurate records, but not limited to, foreclosing on Plaintiff's property then selling it when it does not have the legal authority and proper documentation to do so.

117. Also, in failing to conduct a reasonable investigation and correction of false information in response to Plaintiff's credit reporting dispute. Defendant negligently failed to comply with the requirements of the FCRA. [17]

118. As a result of Defendant's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damages to reputation, emotional distress, and interference with Plaintiff's normal and usual activism for which Plaintiff sees damages in an amount to be determined by the jury.

119. As a direct and proximate result of the negligence and carelessness of the Defendant as set forth above, Plaintiff, suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

---

[17] The **Fair Credit Reporting Act (FCRA)** is a United States federal law (codified at Title 15 United States Code Section 1681 and following) that regulates the collection, dissemination, and use of consumer information, including consumer credit information.

## **FOURTH CLAIM FOR RELIEF**

## **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

120. Plaintiff incorporates the allegations in all preceding paragraphs as if fully set forth herein.

121. Defendants acts and/or omissions were done intentionally and/or with gross indifference to Plaintiff's rights.

122. Plaintiff's emotional distress includes, but is not limited to, extreme humiliation, anxiety and loss of sleep. As a result of the Defendant's conduct, Plaintiff has suffered compensatory, general, and special damages in an amount according to proof. Additionally, Defendant acted with malice, fraud, oppression by attempting to take Plaintiff's real property through foreclosure when they have no legal right to do so, and thus, Plaintiff is entitled to an award of punitive damages. THEREFORE the foreclosure must be set aside.

## **SIXTH CAUSE OF ACTION**

## **INJUNCTIVE RELIEF**

123. Plaintiff incorporates the allegations in all preceding paragraphs as if fully set forth herein.

124.   At all times herein relevant, Defendant, has wrongfully and unlawfully threatened Plaintiff's quiet enjoyment and use of its real property.

125.   Defendant's threatened conduct, unless and until enjoined and restrained by the Court will cause great and irreparable injury to the Plaintiff in that Plaintiff will be deprived of the quiet use and enjoyment of its real property.

126.   Not only will Defendant's conduct cause great and irreparable harm to Plaintiff unless and until enjoined, that same threatened conduct will cause great and irreparable harm to Plaintiff's family.

127.   Plaintiff has no adequate remedy at law for the injuries that will result from the threatened conduct of the Defendant in that it will be impossible for the Plaintiff to calculate the precise amount of damages it will suffer if the Defendant's conduct is not enjoined and restrained.

128.   In this case, the irreparable harm that the Plaintiff will suffer is obvious and enormous. Plaintiff could lose his real property and be evicted from his home. Plaintiff will incur the costs and emotional distress of losing his property and repairing his further damaged credit history. Undeniably, Plaintiff will suffer severe damages.

## **SEVENTH CAUSE OF ACTION**

### **DEFEDANT DOES NOT HAVE INTEREST**

129. Plaintiff incorporates the allegations in all preceding paragraphs as if fully

set forth herein.

130. Neither COUNTRYWIDE BANK, FSB, BOA, HSBC BANK, MERS, nor

anyone else has recorded a transfer of beneficial interest in the Note to the

Defendant – only the transfer of servicing rights.

**FACT**: The selling or transferring of a Note is not to be confused with the selling
of Servicing Rights, which is simply the right to collect payment on the Note, and
keep a small portion of the payment for Servicing Fees. Usually, when a Servicer
states that the homeowner's loan was sold, they are referring to Servicing Rights,
not the selling of the actual loan.

131. Defendant **does not have standing** to enforce the Note because the

Defendant is not the owner of the Note, Defendant is not a holder of the Note, and

Defendant is not a beneficiary under the Note.

132. Defendant does not claim to be a holder of the Note or a beneficiary in the

Notice of Sale Under Power. Defendant describes themselves as a loan servicer in

the Notice of Trustee's Sale.

**NOTE**: Defendant is a loan servicer committing fraud. The Plaintiff would like to

educate the court with the following explanation:

**SERVICING FRAUD** has grown out of the "real estate boom" that we're currently in.
The homeowners buy the homes, get the mortgages, and the mortgage servicing companies are
there waiting to get the servicing rights, skim fees off the top, and then eventually move in with
foreclosures. The real estate broker gets paid, the mortgage processor gets paid, the lender gets

paid, the mortgage servicer gets paid, the debt collector gets paid, and the homeowner loses all their money and eventually their home.

The economics of this fraud breaks down into two parts: the servicing part and the legal cost part. The servicing part of the fraud is very straightforward. The servicer is buying your Note from the lender or previous servicer with their credit, but taking your real cash to make their payments. Nothing or next to nothing from each of your mortgage payments is going to your principal balance. So the mortgage servicer is just pocketing all that money. The mortgage servicer is pocketing the entire payment plus whatever other fees they can get you to pay. Over the course of five years as a customer, you'll have paid none of your principal, plus then they find a way to sell your home all at once for complete, immediate cash at a foreclosure sale auction on the courthouse steps.

The mortgage servicer then recycles that money into their own business cash flow and for buying servicing rights for another loan and pulling the same fraud on the next homeowner. There is no risk at all for the servicer.

The legal cost part of the fraud is when you as a customer fight them in court to keep your house. The bottom-line is that they do have lawyers that process so many of these foreclosures that they have the written forms all prepared and do many, many of these foreclosures at once. This is where the term "foreclosure mills" come from.

The way it usually works is that these servicers (debt collectors) get paid by the debt they collect or by the foreclosure. If the servicer doesn't get the homeowner to pay their fees or foreclose, then they don't get paid.

133. Since the Defendant is a servicer, the Defendant cannot foreclose on

Plaintiff's property without authorization from the actual Lender under the terms of the Pooling and Servicing Agreement.

134. Plaintiff is informed and believes that the Defendant cannot produce an original wet ink signed Note. Defendant does not own the loan and they cannot identify the owner of the loan.

135. Defendant was not assigned nor sold the note by COUNTRYWIDE BANK, FSB, the original holder of the Note, which would be the only authorized entity legally able to sell or assign the Note.

## EIGHTH CAUSE OF ACTION

## GEORGIA'S FAIR BUSINESS PRACTICES ACT,

## O.C.G.A. SECTIONS 10-1-390 ET. SEQ.

136. Plaintiff incorporates the allegations in all preceding paragraphs as if fully set forth herein.

137. Defendant's false and misleading statements about their services claiming to be something other than debt collectors or servicers are violations of Georgia's Fair Business Practices Act. [18] This law applies to consumer transactions involving the sale, lease or rental of goods, services or property mainly for personal, family or household goods. Here, being that this cause of action involves a home; the Defendant is liable for this cause of action.

138. This case involves a substantial public interest.

---

[18] **Fair Business Practices Act**

(*O.C.G.A. Sections 10-1-390 et seq.*)

Georgia's Fair Business Practices Act prohibits unfair and deceptive acts or practices in the marketplace. This law applies to consumer transactions involving the sale, lease or rental of goods, services or property mainly for personal, family or household purposes. The Georgia Department of Law's Consumer Protection Unit will pursue a case of this nature whenever the Attorney General determines there is a substantial public interest.

139.  Plaintiff suggests that the honorable judge assigned to this case go see the movie *The Big Short*, Adam McKay's rocking adaptation of Michael Lewis' nonfiction bestseller about the 2008 economic meltdown, in which Wall Street shysters vaporized some $5-trillion in savings and real-estate value, and left millions of Americans jobless and without homes. [19]

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against the Defendant as follows:

1.  For Equitable relief, including an Order for Defendant to rescind all Notices of Default against Plaintiff's account and to engage in reasonable efforts to restore Plaintiff's credit to its previous standing, by entering a statement which says, "Paid as Agreed";

2.  For Injunctive Relief enjoining Defendant from taking any further action against Plaintiff's property during the pendency of this action.

3.  That this honorable Court enter a judgment declaring Defendant's acts and practices complained of herein to be unlawful, unfair, and fraudulent;

---

[19] This is a story that can only leave one angry and disgusted—how could government overseers fail in their duty to stop such blatant fraud? The picture leaves you feeling jazzed and happy… and yet still angry and disgusted. The men we see blowing the whistle on Wall Street by shorting the bonds are also making billions—billions! —of dollars by doing so. The human wreckage they begin to see piling up is partly their doing. On the other hand, if they *hadn't* acted, might the catastrophe, going on longer, have been worse? Baum is torn: "*Average people are gonna be the ones who'll have to pay for all this*," he says. "*They always do*." How right he is.

4. For Injunctive Relief against Defendant to prevent future wrongful conduct;

5. That Plaintiff recovers costs, and reasonable attorneys' fees, if incurred;

6. That Defendant be required to specifically prove all allegations in this action;

7. For general damages and special damages in an amount to be proven at trial, but not less than $2,000.00 per Plaintiff, pursuant to 15 U.S.C. § 1692(k) a 1;

8. For actual damages, including general damages and special damages in an amount to be proven at trial, but not less than $1,000 per cross-complainant, pursuant to 15 U.S.C. § 1692(k) a2a;

9. For costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692(k)a3;

10. For a judicial declaration pursuant to Code of Civ. Procedure 1060 that Defendant's actions violated the FDCPA;

11. For punitive damages;

12. And for such other and further relief as the Court may deem just, equitable and proper.

Respectfully submitted on this 18th day of September 2018

Darryl M. Reshaw,
Sui Juris in Propria Persona
345 Phillips Drive
Fayetteville, GA 30214
770- 461 5717

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of each and every claim so triable.

Respectfully submitted on this 18th day of September 2018

Darryl M. Reshaw

# **VERIFICATION**

STATE OF GEORGIA                )

                                  ss

COUNTY OF FAYETTE           )

I, Darryl M. Reshaw, proceeding in Sui Juris in Propria Persona and under penalty of perjury state the following: I am over the age of 21 and competent to testify in all matters concerning the foregoing Complaint; I have prepared and read the foregoing Complaint, the pleadings and defenses set forth herein, which comes from my first-hand knowledge, information and belief, formed after reasonable enquiry, believes that they are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that they are not interposed for any improper purpose such as or needlessly increase the cost of litigation. All of the statements are true and correct.  Everything I have stated is true to the best of my knowledge and belief.

_____

Darryl M. Reshaw, Plaintiff

Sworn to and Subscribed Before Me

This __18__ day of September, 2018

NOTARY PUBLIC, State of Georgia
Sharon G Robinson
NOTARY PUBLIC
Fayette County, GEORGIA
My Comm. Expires 07/31/2021

Sharon G Robinson
NOTARY PUBLIC
Fayette County, GEORGIA
My Comm. Expires 07/31/2021

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

Darryl M. Reshaw,

Plaintiff

v.

SELECT PORTFOLIO SERVICING, INC.

Defendant

CIVIL ACTION
FILE NO:

**OFFICAL NOTICE**

**SWORN DENIAL OF ALLEGED DEBT WITH SELECT PORTFOLIO SERVICING, INC.**

STATE OF GEORGIA

COUNTY OF FAYETTE

I, Darryl M. Reshaw, deny this is my debt, and if it is my debt, I deny that it is still a valid debt, and if it is a valid debt, I deny the amount sued for is the correct

amount.

This constitutes an Official Notice in accordance with the Fair Debt Collection Practices Act and the Truth In Lending Act.

It has come to my attention that there may have been some accounting irregularities in this account which have adversely affected me. In reviewing the account it has come to my attention that fraud and/or other violations of public policy may have occurred in the operation of this account, therefore, I will be conducting discovery to determine the true facts in this matter.

This discovery process has been presented under Notarial Seal for the purpose of certifying the admissions, confessions and stipulations of the Parties, to create a public record thereof, via the issue and filing of an Administrative Declaratory Judgment, by Notarial Protest. Said Administrative Declaratory Judgment is issued under statutory authority and under the authority of the Secretary of State, acting as an agent of the Department of State, and carries the power and authority as if issued by the highest court in the land. Said Judgment constitutes res judicata, star decisis, collateral estoppel and judgment by estoppel.

Please take note that this discovery process has been served under Notarial Seal and valid subpoena establishing your mandatory obligation to timely respond and/or rebut the following, point by point and line by line, verified true, correct and complete, signed, sworn to and notarized in affidavit form and to provide certified copies of the requested documentation.

Please respond and/or rebut the following, point by point and line by line, in affidavit form, and provide documentary evidence to support your claim.


 It has come to my attention that since 1933, when Franklin D. Roosevelt took all of the gold and silver out of circulation, that we have no currency of value or

substance with which to pay a debt. Our economic system operates on credit and debt. If we have no currency of value or substance in circulation today, then one must wonder, what did the Bank "loan" me? It is unlawful for the bank to loan me their credit. So, what did the bank loan me? What value/substance did the bank loan me?

Please provide the evidence that the bank loaned me anything of value.

Stipulated answer of respondent: Nothing of value, the bank can't lend money.


1. At the closing, I placed my signature on a Promissory Note which I gave to the bank in the exchange. Said Promissory Note had no value prior to my placing my signature on it. Did it not?

Stipulated answer of respondent:  yes

2. There are no other signatures on said Promissory Note, therefore, it was my signature that gave the value to the Promissory Note which I gave to the bank in the exchange. Was it not?

Stipulated answer of respondent: yes

3. Was statement 1 & 2 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

4. It has come to my attention that a Promissory Note is a check "Blacks Law #5. True/False

Stipulated answer of respondent: yes it is a check

5. Was statement 1, 2 & 4 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

6. It has come to my attention that the Promissory Note was stamped pay to order of without recourse, who was it paid too?

Stipulated answer of respondent:  It was paid to the Bank

7. Was statement 1, 2, 4 & 6 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

8. If it was paid to the Bank, who's account was it deposited in?.

Stipulated answer of respondent:  It was deposited in the Bank's personal account

9. Was statement 1, 2, 4, 6 & 8 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

10. If the funds was deposited in the Bank's personal account, was the alleged loan paid in full?.

Stipulated answer of respondent: yes

11. Was statement 1, 2, 4, 6,8 & 10 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

12. Did you inform the alleged Borrower that the alleged loan was paid in full ?

Stipulated answer of respondent: no

13. Since 1933 the United States has operated upon the good faith and credit of the American people, not the good faith and credit of the Banking industry. Has it not?

Stipulated answer of respondent: yes

14. It has come to my attention that the buyer should have sign the WARRENTY DEED at closing, was this fact disclosed to the buyer(s) at anytime?

Stipulated answer of respondent: no

15. It has come to my attention that the MORTGAGE is a lease, was this disclose to the buyer(s) at anytime?

Stipulated answer of respondent: no

16. The government, including the government sanctioned corporations, institutions and banks, have no authority to create money. Only We the American people can create money. We the American people are the originators of the money and are therefore the Creditors. Are we not?

Stipulated answer of respondent: yes

17. When I placed my signature on the Promissory Note, giving value to the Note, I was the originator of the funds and, therefore, the Creditor of the transaction. Am I not?

Stipulated answer of respondent: yes

18. Was statement 1, 2, 4, 6, 8,10 & 11 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

19. Georgia state codes, define a Promissory Note as a security. Title 12 section 1813 (L)(1) states that when one deposits a Promissory Note it becomes a cash item. Georgia Code states that I have a right to restitution and rescission if the bank sells an unregistered security. True /False?

Stipulated answer of respondent: true

20. Was statement 1, 2, 4, 6, 8, 10, 11 & 18 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

21. It has come to my attention that the Promissory Note which I executed is an unregistered security and that it may have been sold, traded or assigned in violation of state statutes. Please provide me with a certified copy, front and back, of the

original Promissory Note which I signed and presented to the Bank in this transaction and the lawful authority which authorized the Bank to engage in the sale of an unregistered Security, in this transaction. Your failure to provide me with documentary evidence of the lawful authority shall constitute your stipulation that no lawful authority exists and your tacit confession to the unlawful sale of an unregistered security in violation of state statute.

It has also come to my attention that shortly after the closing that the Bank deposited said Promissory Note as a cash item and ledgered said Note as a liability in the bank's Payables Account and identified ME as the Creditor in the account. Did they not?

Stipulated answer of respondent: yes


22. Was statement 1, 2, 4, 6, 8, 10, 11, 18, & 21 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

23.  It is also my understanding that the bank , in accordance with GAAP, ledgered the "Mortgage", as an asset in the bank's Receivables Account and identified ME as the debtor in the account. Did they not?

Stipulated answer of respondent: yes

24. Was statement 1, 2, 4, 6, 8, 10, 11, 18,21 & 21 above disclosed to the buyer(s) at the time of closing or anytime thereafter?

Stipulated answer of respondent: no

25.  It is further my understanding that because I failed to see through the bank's carefully designed illusion and instruct the bank to make the financial adjustments to zero the account in the set-off, the bank posted their liability/my asset in their

Payables Account as an off balance sheet entry and after a period of time the funds were claimed as abandoned funds. Were they not?

Stipulated answer of respondent: yes

26. It is also my understanding that the international accounting system called Basel II and/or Basel III have been fully implemented; that off balance sheet accounting is unlawful, and that all banks and lending institutions must be in compliance therewith. Are they not? Please provide documentary evidence that you are Basel II & III compliant.

Stipulated answer of respondent: yes

27. UCC 3-104(a) & (c) and UCC 105 (a)(c) makes it clear that I was the Issuer, Drawer, Maker of the Note that I executed, giving it value, at the closing, while UCC 8-102(12),(15),(9) and UCC 8-105 leaves no doubt that I am the holder of the entitlement right to the funds. I am the Creditor and entitlement holder with the authority to issue Entitlement Orders as concerns this transaction and/or this account. Am I not?

Stipulated answer of respondent: yes

28. The Bank registered the "Mortgage" but did not register the "Note", therefore, the "Note" is an unregistered security in accordance with the UCC and International Banking Law. Is it not?

Stipulated answer of respondent: yes


Please provide me certified copies of the accounting of the Promissory Note that I executed at the closing, to wit: the Accounts Receivables and Accounts Payables ledgers of this Promissory Note.

Please provide me a certified copy, front and back, of the original Promissory Note as well as all assignments of the Note.

I request, in the nature of a Demand in Recoupment, that the Bank merge the Accounts Payables with the Accounts Receivables Account to zero the account in accordance with GAAP and Public Policy and/or provide me with documentary evidence that authorizes the Bank to conceal said funds for the purpose of dispossessing me of said funds. Your failure herein shall constitute your admission that no valid authority exists and that the Bank's operation of this account is unlawful and fraudulent.

Your failure to timely respond and/or rebut the foregoing, point by point and line by line, in Affidavit form, shall constitute your admission and stipulation to the stated claims and establish the evidence as a matter of fact. Your failure to respond, a partial response, or a non-responsive response shall constitute a dishonor and your agreement and stipulation to the facts as set forth herein. Your failure to respond in affidavit form, signed, sworn to and notarized and/or your failure to provide certified copies of the requested documentation shall constitute you a dishonor and shall result in the issue of a Declaratory Judgment, by Default, certifying the stipulation and agreement of the Parties. Said Declaratory judgment, by Notarial Protest is as binging on the Parties and their privies as if issued by the highest court in the land and constitutes res judicata, star decisis and an estoppel. Respondent's failure to respond shall constitute your agreement that the process is free of error and/or omission, lawful or otherwise, having had the opportunity to respond and provide documentary evidence in affidavit form, and choosing to demur and stipulate to the facts as set forth by Claimant creating a binding contract between the Parties.

Your dishonor constitutes an estoppel and your voluntary waiver of all rights and remedies that may otherwise exist and your agreement to confess judgment in this matter.

_____

Darryl M. Reshaw

Sworn to and Subscribed Before Me

This _18_ day of September, 2018

_____

NOTARY PUBLIC, State of Georgia

Sharon G Robinson
NOTARY PUBLIC
Fayette County, GEORGIA
My Comm. Expires 07/31/2021

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | |
|---|---|
| Darryl M. Reshaw, an individual<br>Plaintiff | CIVIL ACTION<br>FILE NO: |
| v. | |
| SELECT PORTFOLIO SERVICING, INC. | **REQUEST FOR VALIDATION OF DISPUTED DEBT** |
| Defendant | |

Darryl M. Reshaw, the Plaintiff, pursuant to 15 U.S.C. § 1692g, FAIR DEBT

COLLECTION PRACTICES ACT ("FDCPA") hereby disputes the alleged debt in

the above titled matter. Therefore, this Notice shall be deemed a request/demand

for debt validation request as defined by 15 U.S.C. § 1692(g)(1)(2)(5)(b) and

Georgia Consumer Protection Statutes/Laws.

Plaintiff hereby requests a validation, pursuant to 15 U.S.C. § 1692.

Specifically, I dispute as to the identity of the true owner (if any) of the alleged

debt, the alleged amount due, and owing.

I also dispute all signatures appearing on Defendant's unauthenticated hearsay

documents, and their alleged authority and capacity to collect and or sue on behalf

of the same. Alleged Defendant and "debt collectors" as that term is defined by 15

U.S.C. § 1692a(6).

Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

Defendant, SELECT PORTFOLIO SERVICING, INC., is attempting to collect a

"household debt" as that term is defined by 15 U.S.C. § 1692a(5).

Lastly the Plaintiff has reviewed his consumer credit reports and upon

reviewing them discovered Defendant has been and continues to report an alleged

mortgage debt account.

I request the Defendant to delete the inaccurate information immediately pursuant to 15 U.S.C. § 1681 et, al. Parties must comply with the request timely and completely. Failure to provide the above documentation will result in Plaintiff filing a counterclaim for damages.

Respectfully submitted on this 18th day of September 2018

Darryl M. Reshaw